```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT  OF TEXAS
 2                     AMARILLO DIVISION

 3   UNITED STATES OF AMERICA     §
                                  §
 4   VS.                          §        CRIMINAL ACTION
                                  §
 5   BART WADE REAGOR             §     NO. 2:21-CR-025-Z (01)
                                  §

 6   ============================================================

 7          TRANSCRIPT OF CRIMINAL TRIAL BY JURY
                      CHARGE CONFERENCE
 8        BEFORE THE HONORABLE MATTHEW J. KACSMARYK
                 UNITED STATES DISTRICT JUDGE
 9
                       OCTOBER 13, 2021
10
                     VOLUME III OF IV
11
                     AMARILLO, TEXAS
12
     ============================================================
13                  A-P-P-E-A-R-A-N-C-E-S

14
     FOR THE GOVERNMENT:      MR. JEFFREY R. HAAG and
15                            MS. AMANDA R. BURCH
                              Assistant United States Attorneys
16                            1205 Texas Ave., 7th Floor
                              Lubbock, Texas  79401
17
                                    AND
18
                              MR. JOSHUA FRAUSTO
19                            Assistant United States Attorney
                              500 South Taylor, LB 238
20                            Amarillo, Texas  79101-2442

21

22   FOR THE DEFENDANT:       MR. DAN L. COGDELL and
                              MR. NICHOLAS HAMILTON NORRIS
23                            Jones Walker, LLP
                              811 Main Street, Suite 2900
24                            Houston, Texas  77002

25                                  AND
```

```
 1   ALSO FOR DEFENDANT:            MR. DARREN TRAY PAYNE and
                                    MR. MATTHEW DANE POWELL
 2                                  Payne, Powell & Truitt Law Group
                                    2529 74th Street
 3                                  Lubbock, Texas  79423

 4

 5   COURT REPORTER:               MS. STACY MAYES MORRISON
                                    Official Court Reporter
 6                                  205 E. 5th, LB #F13263
                                    Amarillo, Texas  79101
 7                                  (806) 672-6219

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

     Proceedings reported by mechanical stenography; transcript
25   produced by computer.
```

1              VOLUME III (PAGES 544 - 607)

2                                                      PAGE

3   CAPTION/APPEARANCES.................................... 544

4   INDEX................................................. 546

5   CHARGE CONFERENCE..................................... 548

6   GOVERNMENT'S ARGUMENT ON SIMILAR ACTS/404(B)......... 557

7   DEFENDANT'S OBJECTION ON SIMILAR ACTS/404(B)......... 557

8   COURT OVERRULES DEFENDANT'S OBJECTION................ 558

9   GOVERNMENT'S ARGUMENT ON NEGLIGENCE INSTRUCTION...... 559

10  COURT'S FINDING...................................... 561

11  UNANIMITY OF THEORY.................................. 566

12  GOVERNMENT'S ARGUMENT ON UNANIMITY OF THEORY......... 567

13  DEFENDANT'S ARGUMENT ON UNANIMITY OF THEORY.......... 576

14  GOVERNMENT'S SUR-REPLY UNANIMITY OF THEORY........... 576

15  COURT'S FINDING ON UNANIMITY OF THEORY............... 577

16  FURTHER DISCUSSION ON UNANIMITY OF THEORY............ 578

17  GOVERNMENT'S FURTHER ARGUMENT ON UNANIMITY OF THEORY. 581

18  DEFENDANT'S FURTHER ARGUMENT ON UNANIMITY OF THEORY.. 583

19  COURT'S FINAL RULING ON UNANIMITY OF THEORY.......... 583

20  GOVERNMENT'S ARGUMENT ON AIDING AND ABETTING......... 584

21  GOVERNMENT'S OBJECTION ON GOOD FAITH................. 586

22  DEFENDANT'S OBJECTION ON AIDING AND ABETTING......... 587

23  GOVERNMENT'S REPLY ON AIDING AND ABETTING............ 588

24  COURT'S RULING ON AIDING AND ABETTING................ 589

25  GOVERNMENT'S ARGUMENT ON GOOD FAITH.................. 590

|  |  | PAGE |
|---|---|---|
| 2 | DEFENDANT'S ARGUMENT ON GOOD FAITH.................................. | 592 |
| 3 | GOVERNMENT'S RESPONSE............................................... | 593 |
| 4 | COURT TAKES GOOD FAITH UNDER ADVISEMENT............................. | 594 |
| 5 | DEFENDANT'S FURTHER ARGUMENT ON GOOD FAITH......................... | 595 |
| 6 | GOVERNMENT'S FURTHER ARGUMENT ON GOOD FAITH........................ | 597 |
| 7 | DEFENDANT'S FURTHER ARGUMENT ON GOOD FAITH......................... | 599 |
| 8 | COURT TAKES GOOD FAITH UNDER ADVISEMENT............................. | 601 |
| 9 | GOVERNMENT'S OBJECTION TO CHARACTER EVIDENCE....................... | 602 |
| 10 | DEFENDANT'S RESPONSE TO CHARACTER EVIDENCE......................... | 603 |
| 11 | GOVERNMENT'S FURTHER ARGUMENT ON CHARACTER EVIDENCE................ | 603 |
| 12 | COURT SUSTAINS OBJECTION ON CHARACTER EVIDENCE..................... | 604 |
| 13 | REPORTER'S CERTIFICATE............................................. | 607 |

```
1                        CHARGE CONFERENCE

2                        OCTOBER 13, 2021

3            (The following took place in open court with all parties

4       present.)

5                 THE COURT:  Please be seated.  Okay.  We are back

6       on the record in Case No. 2:21-CR-O25-Z, United States of

7       America versus Bart Wade Reagor.

8                 Have both Government and Defendant received the

9       promised consolidated version of the proposed jury charge

10      with the disputed language in bold?

11                MS. BURCH:  Yes, Your Honor.

12                THE COURT:  Okay.  And from the Defense?

13                MR. NORRIS:  Yes, Your Honor.

14                THE COURT:  Okay.  So when we read this to the jury

15      when it's in final form, I will instruct the parties to

16      approach to make their necessary record objections as to the

17      Court's reading.

18                I'm inclined not to read this line by line where

19      there really isn't a dispute, but, if you want to do it word

20      by word, line by line, we can.

21                So Ms. Burch?

22                MS. BURCH:  Your Honor, we would like to just go to

23      the parts that are disputed, if that's --

24                THE COURT:  Okay.  So let's do it page by page.

25      Where there's no dispute, I'll get that on the record, and
```

1    then we can do it page by page instead of line by line.

2         So Page 1, 1.03 Introduction to Final Instructions.

3    Does the Government have any objections to the proposed jury

4    charge language appearing on Page 1?

5         MS. BURCH:  No, Your Honor.

6         THE COURT:  Does the Defendant have any objections

7    to the proposed jury charge language appearing on Page 1?

8         MR. NORRIS:  No, Your Honor.

9         THE COURT:  And I know these pages aren't numbered.

10   Actually, I think your clean version may be.  Okay.

11        MS. BURCH:  Mine are numbered, Your Honor.

12        THE COURT:  Okay.  Page 2, 1.04 Duty to Follow

13   Instructions.  Does the Government have any objections to the

14   proposed jury charge as it appears on Page 2?

15        MS. BURCH:  No, Your Honor.

16        THE COURT:  Does the Defendant have any objections

17   to the proposed jury charge as it appears on Page 2?

18        MR. NORRIS:  No, Your Honor.

19        THE COURT:  Okay.  And moving to Page 3 -- oh, you

20   don't have to keep standing, so this is Charge Conference.

21   So sometimes judges do this in chambers, so much more

22   informal.

23        So Page 3, 1.05 Presumption of Innocence, Burden of

24   Proof, Reasonable Doubt.  Here, because defendant did not

25   elect to testify, we have included the pattern insert ─ and

```
 1   this is directly from the relevant 1.05 Fifth Circuit Pattern
 2   — and no inference whatever may be drawn from the election
 3   of a defendant not to testify.  So in your version we have
 4   inserted that language.
 5          With that insertion, does the Government have any
 6   objection to the proposed jury charge as it appears on
 7   Page 3?
 8          MS. BURCH:  No, Your Honor.
 9          THE COURT:  And does the Defendant have any
10   objection to the proposed jury charge as it appears on
11   Page 3?
12          MR. NORRIS:  No, Your Honor.
13          THE COURT:  Okay.  Page 4, 1.06 Evidence -
14   Excluding What is Not Evidence.  Does the Government have any
15   objections to the proposed jury charge as it appears on
16   Page 4?
17          MS. BURCH:  No, Your Honor.
18          THE COURT:  And does the Defendant have any
19   objection to the proposed jury charge as it appears on
20   Page 4?
21          MR. NORRIS:  No, Your Honor.
22          THE COURT:  Moving to Page 5, Page 5, 1.08 Evidence
23   - Inferences - Direct and Circumstantial.  Does the
24   Government have any objection to the proposed jury charge as
25   it appears on Page 5?
```

1          MS. BURCH:  No, Your Honor.

2          THE COURT:  Does the Defendant have any objections

3    to the proposed jury charge as it appears on Page 5?

4          MR. NORRIS:  No, Your Honor.

5          THE COURT:  Now, Page 6.  This is 1.09 Credibility

6    of Witnesses.  I'll just admonish you that it carries over

7    onto a second page, so please pay attention to Page 6 and 7.

8          Here, the Court did not include the insert for

9    defendant testimony because it did not happen, so that has

10   been omitted from prior drafts.  With that omission, does the

11   Government have any objections to the proposed jury charge as

12   it appears on Pages 6 and 7?

13         MS. BURCH:  No, Your Honor.

14         THE COURT:  Does the Defendant have any objections

15   to the proposed jury charge as it appears on Pages 6 and 7?

16         MR. NORRIS:  No, Your Honor.

17         THE COURT:  Okay.  Page 8, 1.10 Character Evidence.

18   There has been some opinion testimony in this category, so

19   the Court has included the 1.10 pattern on character

20   evidence.

21         Does the Government oppose or object to any of the

22   language appearing on Page 8 of the proposed jury charge?

23         MS. BURCH:  No, Your Honor.

24         THE COURT:  Does the Defendant object to any of the

25   proposed language appearing on Page 8 of the proposed jury

1    charge?

2              MR. NORRIS:  No objection.

3              THE COURT:  Page 9, which reflects the Fifth

4    Circuit Pattern language on 1.11 Impeachment By Prior

5    Inconsistencies.  Does the Government have any objections to

6    the proposed jury charge appearing on Page 9?

7              MS. BURCH:  No, Your Honor.

8              THE COURT:  Does the Defendant have any objections

9    to the language appearing on Page 9 of the proposed jury

10   charge?

11             MR. NORRIS:  No objection, Your Honor.

12             THE COURT:  Okay.  Now, because this case did

13   involve prior convictions, or at least some testimony and

14   evidence of prior convictions, which is more atypical, I have

15   included 1.13, the pattern for Impeachment By Prior

16   Conviction.

17             Please note the two names that were inserted.

18   Shane Smith was convicted in 2019 of Wire Fraud, and Steven

19   Reinhart was convicted in 2021 of Misprision of a Felony.

20   Those should pair correctly with the witnesses who were

21   subject to impeachment for reason of prior conviction.

22             Does the Government have any objection to the

23   proposed language as it appears on Page 10 of the proposed

24   jury charge?

25             MS. BURCH:  No, Your Honor.

1          THE COURT:  Does the Defendant have any objection

2     to the language as it appears on Page 10 of the proposed jury

3     charge?

4          MR. NORRIS:  No objection, Your Honor.

5          THE COURT:  Next, on Page 11, you'll see the

6     general pattern language on expert opinion testimony.  We've

7     had a battle of experts in this case.  Here, the parties I

8     think agreed to delete the first sentence of the Fifth

9     Circuit Pattern, but, otherwise, it reflects pattern language.

10         Does the Government object to the language as it

11    appears on Page 11 of the proposed jury charge?

12         MS. BURCH:  No, Your Honor.

13         THE COURT:  And does the Defendant object to the

14    language as it appears on Page 11 of the proposed jury

15    charge?

16         MR. NORRIS:  Your Honor, I don't think we have an

17    objection, but I just want to make sure that the record is

18    clear.

19         I think we originally objected to the third

20    paragraph of this instruction.  Is that what the Court was

21    referring to that was deleted, or was it something else, or

22    am I looking at the wrong thing?

23         THE COURT:  Okay.  Let me track my notes here.

24    It's 1.18 Expert Opinion Testimony.  There was an insert to

25    delete the first sentence, but I don't think there was an

```
1    entire paragraph.
2            I'm pulling up the Fifth Circuit Pattern
3    electronically right now.
4        (Attorneys' sotto-voce conference.)
5        THE COURT:  And, as a reminder, the patterns were
6    changed in 2019, so let's all work from the updated version
7    if we're going to start with the pattern.
8            Okay.  So, by my recollection — and I think this
9    is reflected in the draft that you're reviewing — the
10   parties, one party or the other requested that we delete the
11   first sentence, which would require insertion of witness
12   names to this sentence.  During the trial you heard the
13   testimony of blank who expressed opinions concerning blank.
14           Rather than do that four times, at least the
15   documents I had presented to chambers, just omitted that
16   first sentence.
17       MR. NORRIS:  We have no objection to that, Your
18   Honor.
19       THE COURT:  Okay.  So you're fine -- even though
20   that is a slight deviation from the pattern, it really only
21   deals with the name of expert and subject matter.  You're
22   okay with that deletion?
23       MR. NORRIS:  Correct, Your Honor.
24       THE COURT:  Okay.  So 1.18 Expert Opinion
25   Testimony, that will be submitted as written in the proposed
```

```
 1   jury charge.
 2           Page 12, 1.19 On or About.  This is the pattern
 3   language on that concept.
 4           Does the Government have any objection to the
 5   language appearing on Page 12 of the proposed jury charge?
 6           MS. BURCH:  No, Your Honor.
 7           THE COURT:  Does the Defense have any objection to
 8   the language appearing on Page 12 of the proposed jury
 9   charge?
10           MR. NORRIS:  No, Your Honor.
11           THE COURT:  Next, on Page 13, you will see the
12   pattern for Considering Only the Crimes Charged.  This is the
13   1.21 pattern.
14           Does the Government have any objections to the
15   language appearing on Page 13 of the proposed jury charge?
16           MS. BURCH:  No, Your Honor.
17           THE COURT:  Does the Defendant have any objections
18   to the language appearing on Page 13 of the proposed charge?
19           MR. NORRIS:  No, Your Honor.
20           THE COURT:  Next, moving to Page 14, this is the
21   pattern -- I've read aloud at least this concept, if not
22   these exact words, to the jury in explaining sentencing.
23   This is the Fifth Circuit Pattern on punishment.
24           Does the Government have any objection to the
25   language appearing on Page 14 of the proposed jury charge?
```

1          **MS. BURCH:**  No, Your Honor.

2          **THE COURT:**  Does the Defendant have any objection

3  to the language appearing on Page 14 of the proposed jury

4  charge?

5          **MR. NORRIS:**  No, Your Honor.

6          **THE COURT:**  On the next page, Page 15, you will see

7  the Fifth Circuit Pattern 1.23 on Single Defendant - Multiple

8  Counts.

9          Does the Government have any objection to the

10  proposed language appearing on Page 15 of the proposed jury

11  instruction?

12          **MS. BURCH:**  No, Your Honor.

13          **THE COURT:**  Does the Defendant have any objections

14  to the language appearing on Page 15 of the proposed jury

15  charge?

16          **MR. NORRIS:**  No objection, Your Honor.

17          **THE COURT:**  Okay.  I believe we are now to the

18  point where there is some disagreement, and this would begin

19  with Page 16.  The proposed insertion for Similar Acts.

20          Beginning with the Government, here, the Government

21  requested this insertion based on the 2019 Fifth Circuit

22  Pattern Jury Instruction.

23          I believe Defendant objected because 404(b)

24  evidence was inadmissible and didn't anticipate that that

25  would be presented at trial.

1          Ms. Burch, given how evidence was presented in this

2     case, does the Government continue to request the Fifth

3     Circuit Pattern on 1.32 Similar Acts?

4          **MS. BURCH**:  Yes, Your Honor.  The Government moved

5     to admit Exhibits 48 and 51 under both theory of them being

6     intrinsic to the offense, or alternatively under 404(b).

7          And, if my recollection is correct, the Court did

8     find them to be intrinsic evidence and relevant evidence, but

9     it alternatively admitted them under 404(b).  And, if that's

10    the case, then this instruction should remain.

11         If the Defense is willing to waive their challenge

12    to those two exhibits as intrinsic evidence, then we would be

13    happy to remove this instruction.

14         **THE COURT**:  Okay.  Mr. Norris, a response from the

15    Defense?

16         **MR. NORRIS**:  Yes, Your Honor.  I mean, we maintain

17    our written objection about 404(b).

18         Also, I think I'm going to disagree with Ms. Burch

19    here.  I thought the evidence -- the Court ruled on the

20    evidence as being intrinsic, and that's why it came in.  So

21    if it's intrinsic, then it's not 404(b), and therefore there

22    shouldn't be a 404(b) instruction I think would be the

23    Defense's position.

24         **THE COURT**:  Okay.  So we may need to track the

25    transcript to determine if it was admitted on the basis of

1    being intrinsic or subject to 404(b).

2         Let me do this.  Let me confer with my law clerks

3    and let us run a search on the LiveNote transcript and see if

4    we can get to that point in the trial.

5         **(Court/law clerk sotto-voce conference.)**

6         **THE COURT**:  Okay.  My law clerk has checked his

7    notes.  It turns out we did both.  The Court determined that

8    it was intrinsic, and even if it weren't, it was admissible

9    under 404(b).

10        For that reason, the Court will insert the proposed

11   jury charge language that presently appears in bold on

12   Page 16.

13        The Court overrules Defendant's objections for the

14   reason stated, but I will allow you to make any final

15   argument that you may need to make for appellate purposes.

16   Mr. Norris?

17        **MR. NORRIS**:  Your Honor, we have no further

18   argument, just we stand by the objections we already made.

19   Thank you.

20        **THE COURT**:  Okay.  I will incorporate those by

21   reference, and I find that those arguments are preserved for

22   appellate purposes.

23        The Court agrees with the Government because the

24   ruling was on the basis of, first, that the evidence was

25   intrinsic, but also the Court stated aloud that it would be

1    admissible under 404(b); otherwise, that alternative

2    formulation on that ruling I think necessitates some

3    explanation to the jury on how they should consider this

4    evidence, and the Court will insert the requested language on

5    1.32 Similar Acts.

6            Okay.  Moving to Page 17, here, I believe the

7    parties have communicated to the Court that they are -- that

8    the Government intends to withdraw this negligence

9    instruction.  Am I correct about that?

10           **MS. BURCH:**  No, Your Honor.  The one that the

11   Government intends to withdraw is the next one regarding

12   financial institution.

13           **THE COURT:**  Okay.  So on negligence of the victim

14   is not a defense, there is still some disagreement?

15           **MS. BURCH:**  Yes, Your Honor.

16           **THE COURT:**  Okay.  Ms. Burch, I'll allow you to

17   argue for the Government, and I would ask that you

18   specifically address whether this is needlessly duplicative

19   of the 1.40 instruction on materiality, and you may proceed.

20           **MS. BURCH:**  Yes, Your Honor.  This instruction is

21   taken directly from *United States versus Davis* cited at the

22   bottom, which did deal with materiality.

23           We would note that the Defense elicited evidence

24   regarding due diligence from several of the bank witnesses

25   suggesting that they had not been appropriately diligent;

```
 1   also, suggesting that the loan drafter didn't do a good
 2   enough job drafting the loan, and that the expert witness
 3   gave the opinion that the loan agreement should have
 4   contained other provisions to prevent what actually happened
 5   here.
 6          And, so for that reason, we believe that the
 7   instruction regarding carelessness and negligence -- and, of
 8   course, I would have no objection to taking out naivety or
 9   stupidity, but the carelessness and negligence does not
10   excuse criminal conduct on the part of the defendant, and
11   that the part about -- that second sentence could probably
12   go.
13          But, with respect to at least that first sentence
14   about carelessness and negligence, we think that the evidence
15   elicited by the Defense goes specifically to the bank -- it
16   was suggested that the bank was just that.
17          THE COURT:  Okay.  Understood.  And I think some of
18   those arguments may bleed into what is sometimes termed a
19   ratification instruction.  That's the next page.  We'll
20   address that at that time.  The Court will table argument on
21   that.
22          Here, the Court is persuaded that the 1.40
23   instruction on Materiality, which already includes the
24   following language, quote, in determining materiality, you
25   should consider that naivety, carelessness, negligence, or
```

1    stupidity of a victim does not excuse criminal conduct, if

2    any, on the part of the defendant.

3          I understand that that is paired with a heading

4    relative to materiality, but it makes much of the same point.

5    Why then -- why the need for a second instruction with a

6    different heading?

7          **MS. BURCH**:  Your Honor, after further discussion,

8    we can agree to take out Page 17 with the agreement that that

9    last sentence of Page 19 would stay in.

10         **THE COURT**:  Okay.  That is the Court's intention,

11   because 1.40 Materiality is the exact pattern from the Fifth

12   Circuit, so if we do the work there, I think we can avoid any

13   potential duplication confusion.

14         Mr. Norris, it was your objection, so I'm assuming

15   you agree with the Court's analysis?

16         **MR. NORRIS**:  We do, Your Honor.

17         **THE COURT**:  Okay.  So, at this point, and to keep

18   everybody on the same page, this is Page 17 of the proposed

19   jury charge.  It is in bold.  It was disputed.  The Court

20   will not insert the proposed language reflected in that

21   Page 17, which bears the header Negligence of the Victim is

22   Not a Defense.

23         And the Court does intend to instead insert the

24   1.40 Materiality language that appears later in the charge

25   for the reasons stated.

```
 1          Okay.  Now, moving to Page 18, Financial
 2   Institution is the Victim of Bank Fraud, and I imagine I will
 3   hear some argument on this one.
 4          Here, the Government is citing to *United States*
 5   *versus Aubin*, A-U-B-I-N, 87 F.3d 141, which cites the
 6   instances when the Court should give an instruction on
 7   ratification where defendants in financial crime cases allege
 8   that certain officers, directors, or employees directed the
 9   diversion of loan proceeds, and, depending on the evidence,
10   which is now closed, I'll hear the Government's argument on
11   that.
12          Here, I understand the Defendant to be arguing
13   *United States versus Saks*.  This is found at 964 F.2d 1514.
14   And they're arguing specifically that *Saks* distinguishes
15   *Aubin* because they're different statutes, essentially
16   different subparts of the same 1344 statute.
17          Additionally, should this instruction be given, the
18   Defendant will request follow-up language on good faith.
19          And, based on the Court's separate and independent
20   review of Fifth Circuit precedent, it does appear, where this
21   instruction is given, that there is a requirement of some
22   language explaining actions in good faith without intent to
23   defraud.
24          So, with that setup, I'll allow the parties now to
25   argue this page of the proposed jury charge.
```

1       Ms. Burch, you may begin.

2           **MS. BURCH:**  Your Honor, referring to Page 18, the

3   Government and the Defense have agreed that that instruction

4   is not necessary as no evidence was elicited that the actual

5   bank was in on the fraud, and they all testified that they

6   were not, and they --

7           **THE COURT:**  Okay.  This may be --

8           **MS. BURCH:**  -- didn't ratify it in any way.

9           **THE COURT:**  -- the Page 17 that I thought was

10  agreed to.  We just got the page number wrong.  Okay.  That

11  is helpful.

12          Okay.  So, Mr. Norris, I assume you agree?

13          **MR. NORRIS:**  We agree, Your Honor.

14          **THE COURT:**  Okay.  So the Court is not inserting

15  the proposed jury charge language appearing on Page 18

16  bearing the heading Financial Institution is the Victim of

17  Bank Fraud.

18          And the Government [*sic*] agrees with counsel for

19  the Government and the Defendant that no testimony was

20  elicited that would require such an instruction.  Sometimes

21  this pattern is referred to as a ratification instruction.  I

22  have not heard that evidence or testimony from either the

23  Government or the Defendant, so I do not think this

24  instruction is necessary.

25          Now, Page 19, this relates to the pattern

1    instruction on Materiality.  This, I believe, is a straight

2    copy from the Fifth Circuit 2019 Pattern.

3              Does the Government have any objection to the

4    proposed jury charge language appearing on Page 19?

5              MS. BURCH:  No, Your Honor.

6              THE COURT:  Does the Defendant have any objection

7    to the materiality language appearing on Page 19 of the

8    proposed jury charge?

9              MR. NORRIS:  No objection.

10             THE COURT:  Okay.  Moving to Page 20, which

11   reflects the Fifth Circuit Pattern on "Knowingly" and the

12   definition of knowingly.

13             Does the Government have any objection to the

14   proposed language appearing on Page 20 of the proposed jury

15   charge?

16             MS. BURCH:  No, Your Honor.

17             THE COURT:  Does the Defendant have any objection

18   to the proposed language appearing on Page 20 of the proposed

19   jury charge?

20             MR. NORRIS:  No, Your Honor.

21             THE COURT:  Okay.  On Page 21 and Page 22, so be

22   careful to follow to the subsequent page, is this Court's

23   proposed language on 2.58B Bank Fraud.  This tracks patterns

24   and language used and affirmed by the Fifth Circuit.

25             Does the Government have any objection to the

1    language appearing on Pages 21 and 22 of the proposed jury

2    charge?

3              MS. BURCH:  No, Your Honor.

4              THE COURT:  Does the Defendant have any objections

5    to the language appearing on Pages 21 and 22 in the proposed

6    jury charge?

7              MR. NORRIS:  Your Honor, I think, again, I'm a

8    little confused.  We had a -- we filed a written objection to

9    the definition of materiality that was, I think, in the

10   original proposed jury charge here.  We just wanted to -- the

11   objection was that it didn't track with Pattern Jury Charge

12   1.40.  And, as I'm looking back over this, I am not sure if

13   that's been altered to comport with our objection or left

14   out, or if it's still in.

15             THE COURT:  Okay.  I'll give you a moment to confer

16   with counsel.  We've already agreed to 1.40 as appearing in

17   the proposed charge.

18             I'll allow you to track word by word to make sure

19   that you don't see any inconsistency between that

20   instruction, which will be given without objection, and then

21   what appears in 21 and 22.

22        (Defense Attorneys' sotto-voce conference.)

23             THE COURT:  I believe it's consistent.

24             MR. NORRIS:  Your Honor, I think I am wrong.  We

25   don't have an objection.  It looks like it is consistent

1  after all.

2          **THE COURT**:  Okay.  I admire an attorney who says

3  the words, I am wrong.  And, again, because I have five kids,

4  I also like it when kids say that as well.

5          So understood.  And thank you for being diligent

6  and double-checking.

7          So the Court will insert the language on 2.58B Bank

8  Fraud as it appears on Pages 21 and 22 of the proposed jury

9  charge.

10          Now, for the much disputed -- I think this is

11  the -- probably the most disputed language for this Charge

12  Conference, and we've done independent and separate research

13  here in chambers to find the best authority.

14          I submitted -- so, here, we are addressing

15  Unanimity of Theory.  This is derived from the 1.27 Fifth

16  Circuit Pattern.  Obviously, there are frequently unanimity

17  sections inserted.  Here, this is a wrinkle on that.

18  Unanimity of Theory where there might be some argument about

19  elements as distinct from the means underlying the elements.

20          If parties refer to the note appearing in the 2019

21  Fifth Circuit Pattern Charge, you'll see there the Fifth

22  Circuit's explanation for how these controversies arrive on

23  appeal.  Of course, a jury must unanimously find each element

24  of a crime beyond a reasonable doubt; that a federal jury

25  need not always decide unanimously which of several possible

1    sets of underlying brute facts make up a particular element.

2         And this is particularly problematic in multi-count

3    cases where jurors are then tasked with matching facts to

4    elements in multiple counts, so this is why this has

5    percolated through various iterations of appeal.

6         As an example, to tee this up for counsel, in that

7    note, the Fifth Circuit explains:  As this is a disagreement

8    over means underlying a particular element of a crime, the

9    juries need not unanimously agree whether a knife or a gun

10   was used, as long as they unanimously agree the defendant had

11   threatened force.

12        So, here, I'm going to need some help from counsel

13   matching the elements to the means underlying the elements,

14   and then whether we need a separate instruction.

15        I've instructed counsel to download and review the

16   *United States versus Sila*, Case 978 F.3d 264.  That's a 2020

17   case.  That is -- that follows the *Holley* case cited by the

18   Defendant, and then the *Paulus* cited by the Government.

19        So, at this point, this is -- this is the fireworks

20   segment of this Charge Conference, so just pretend you're at

21   oral argument.

22        Ms. Burch, you may proceed with your theories on

23   unanimity of theory.

24        **MS. BURCH**:  Yes, Your Honor.  The Fifth Circuit

25   caselaw supports that the unanimity instruction is only

1    necessary when the -- as it relates to elements, and not as

2    it relates to means.

3          And I would point out that on the Page 21, the very

4    instruction before this, the Fifth Circuit Pattern says that

5    the third element is that the scheme or artifice was

6    executed, but then it says, by means of, and lists the three

7    different means.  And so those are not separate elements.

8    Those are means of a single third element.

9          Furthermore, in *Sila*, it talks about how when you

10   have these groups of like things together -- now, in *Sila*, it

11   was referring to verbs.  I will -- you know, I admit these

12   were not verbs, but it talks about, you know, stealing and

13   conversion being similar, or embezzlement, stealing,

14   purloining, and conversion; that when those are all together

15   and they are similar, that those are just different means of

16   committing an offense.  They are not separate elements.

17         And so I would also note that -- I just did a quick

18   run, as fast as I could, through Fifth Circuit caselaw on

19   1344(2), and I don't see any cases that pop up that treat

20   those things as separate elements.

21         However, the Supreme Court in *Loughrin versus*

22   *United States*.  That's at 573 U.S. 351, and the pincite is

23   355 through 56.  That's a June of 2014 case.  In that case,

24   the Supreme Court says -- it's talking about what the

25   elements of bank fraud are, and that case talks about at

1    least two separate elements, and it lists as the second

2    element the scheme or artifice executed by means of, and it

3    lumps those together again as means.  It does not list those

4    out as a separate element.

5          And so we think that the weight of the authority is

6    that these different false and fraudulent pretenses,

7    representations, and promises are lumped together as means in

8    the vast majority of the caselaw, and that, for that reason,

9    the unanimity instruction is -- it's not warranted by Fifth

10   Circuit precedent.

11         THE COURT:  Okay.  I'm going to pull that case.  I

12   did not have that, and this is 573 U.S. at 351?

13         MS. BURCH:  Yes, 351, and the pincite is 355 to 56.

14   And the case is not about means versus element.  It's not --

15   you know, it's not *Mathis* talking about that, but it lists

16   out elements of bank fraud, and the way it does it suggests

17   that these are means, Your Honor.

18         THE COURT:  Wow.  I can't avoid this exclusio unius

19   thing that keeps recurring.  This feels almost like a canon

20   of construction question, so I'm interested in -- so that

21   Supreme Court case is exactly the statute at issue here in

22   the Reagor case.  It's the same statute.

23         MS. BURCH:  I don't have it printed out.  I'm going

24   to try to pull it up here.

25         THE COURT:  1344(2).  And then I guess, as the

1  Indictment reads, and 2, that would be the aiding and
2  abetting section that the Government --
3          MS. BURCH:  It's 1344(2), which is the subset of
4  1344 that's been charged.  The "and 2" is 18 U.S.C. 2, which
5  is aiding and abetting, which is a different --
6          THE COURT:  Yes.  I recall that those are always
7  distinct and separate.
8          So 1344(2), I'm pulling up the case that you
9  referenced.  I'll ask Mr. Norris to gather his notes and
10  arguments.  And we'll do the work of matching elements as
11  distinct from means underlying the element, and we'll figure
12  this out together.
13          And is the case *Loughrin versus United States*?
14          MS. BURCH:  Yes, Your Honor.
15          THE COURT:  Okay.  And pincite is 355?
16          MS. BURCH:  Yes, Your Honor.
17          THE COURT:  Okay.
18          MS. BURCH:  I direct the Court under II where it
19  goes into the Roman Numeral II.
20          THE COURT:  Yeah.
21          MS. BURCH:  And it talks about common ground, and
22  we agree that the elements are, and it says, first -- now,
23  this case is talking about whether there's an intent element,
24  but it says, first, the clause that the defendant intend to
25  obtain money, and then it says, second, the clause requires

1   the envisioned result by means of false or fraudulent

2   pretenses, representations, or promises, and it doesn't list

3   those out as separate elements.  And the way that it's

4   grouped those together suggests that the Supreme Court sees

5   those as means.  That's the Government's argument, Your

6   Honor.

7           **THE COURT**:  Okay.  So I'm tracking now with you.

8   It's 356 pinpoint requires proof, quote, by means of false or

9   fraudulent pretenses, representations, or promises.  It --

10  oh, and then it goes on to say, petitioner does not contest

11  the jury instructions on either of those two elements.

12          **MS. BURCH**:  Correct.  I think this suggests that

13  the Supreme Court sees this fraud as having two main elements

14  with those three listed out as means of committing that

15  element.

16          Now, the Fifth Circuit breaks it down into four,

17  but, again, the third element is that the scheme or artifice

18  was executed, and then they even in the Fifth Circuit Pattern

19  still use the phrase "by means of," which to me indicates

20  that those are means and not separate elements.

21          **THE COURT**:  Okay.  And I know we've already been

22  through some charge language on this.  We are applying here

23  18 U.S.C. Section 1344(d) [*sic*].  We're trying to distinguish

24  elements from means underlying the element.

25          Here, the Supreme Court is referencing as means the

1   following:  False or fraudulent pretenses, representations,

2   or promises.  What does the Fifth Circuit list for those

3   means?

4           **MS. BURCH**:  The third -- I'm sorry, the pattern

5   jury instruction for the third element says, the scheme or

6   artifice was executed by means of false or fraudulent

7   pretenses, false or fraudulent representations, or false or

8   fraudulent promises, and then in the fourth element goes on

9   to say that those false or fraudulent pretenses,

10  representations, or promises were material.

11          And I think the way that those are grouped in both

12  the third and fourth element suggests that those are means

13  and not separate elements.

14          **THE COURT**:  Okay.  You're confusing the Court

15  because --

16          **MS. BURCH**:  I'm sorry.

17          **THE COURT**:  -- you're using elements, which here

18  can have double meaning in a way that's material to the

19  analysis.  So, here, the means identified are false or

20  fraudulent pretense --

21          **MS. BURCH**:  False or fraudulent --

22          **THE COURT**:  -- representation --

23          **MS. BURCH**:  I'm sorry.

24          **THE COURT**:  -- or promise.

25          **MS. BURCH**:  In the Fifth Circuit Pattern

1    instruction, it lists four elements to bank fraud, four

2    separate elements.

3           In the third element, it lists that the scheme or

4    artifice was executed by means of, and here are the means,

5    false or fraudulent pretenses, false or fraudulent

6    representations, or false or fraudulent promises.

7           **THE COURT**:  Okay.  So the three means are the same,

8    fraudulent or false pretenses, representations --

9           **MS. BURCH**:  Correct.

10          **THE COURT**:  -- or promises?

11          **MS. BURCH**:  And then I would also indicate -- I'm

12    sorry, sorry.  I would also let the Court know that on the

13    fourth element of bank fraud in the pattern jury instruction,

14    so now not the third element, now onto the fourth element of

15    bank fraud, that the Fifth Circuit says that the false or

16    fraudulent pretenses, representations, or promises were

17    material.  So, again, in both the third element and the

18    fourth element, they group those three different means.

19          **THE COURT**:  Okay.  I have your argument.  And I now

20    have a printout of the case we're referring to.

21          Ms. Burch, here, I imagine the relevant event or

22    occurrence, at least as a factual predicate, is really going

23    to turn on these two disbursements as the jury is trying to

24    apply the charged language on the elements of bank fraud.

25          And, again, I don't think the parties are disputing

1    this instruction on Count Three.  This really just goes to

2    Count One and Two.

3         As I used to argue unanimity, there can be minor

4    disagreements on dates and things like that as long as the

5    event or occurrence is the same.  Here, we've heard a lot of

6    language and testimony and evidence about these two

7    disbursements which combined total about 1.7 million.

8         As we have agreed on the Count One, Count Two

9    charge to the jury, is there any concern that the fact that

10   we're dealing with two disbursements might require additional

11   definition as appears in the proposed unanimity of theory

12   language?

13        MS. BURCH:  No, Your Honor.  Those counts are each

14   charged as separate counts, so there's only one date that

15   goes to Count One; there's only one date that goes to Count

16   Two.  If they can't agree on Count One, then they find the

17   defendant not guilty on Count One.

18        THE COURT:  And here --

19        MS. BURCH:  If they agree on Count Two --

20        THE COURT:  And, here, I think we're guided by *Sila*

21   where there was a similar dispute about competing fraudulent

22   events, or at least there was some argument by counsel there

23   was some evidence that there was a Kenya transaction and a

24   Dallas transaction.

25        The Court -- the Fifth Circuit, my boss, in that

1    case found, looking back to the Indictment, that because it

2    was charged with specific approximate date ranges, and that

3    chronology was distinct per count, we didn't have the

4    unanimity confusion, at least as to the factual predicate for

5    the event or occurrence relevant to each count.

6           So, here, as reflected in the Indictment, Page 5,

7    the Government has separately charged Count One with an

8    approximate date of July 14, 2017.  The deposit is materially

9    different as to amount as to, you know, that number which

10   appears there, $766,277.77.

11          The account is same, but there's enough material

12   difference between Count One and Count Two and with specific

13   attention to the approximate date, and then the deposit

14   amount, I think it's very similar to the *Sila* case where that

15   chronology, as it appears in the Indictment and the dating of

16   those counts --

17          And, again, here, Count Two then lists an

18   approximate date of February 28, 2018, with a deposit amount

19   of $1,000,000.

20          So both the approximate date and the deposit amount

21   are distinct, the date ranges are affixed to each count, and

22   if you combine that then with the *Loughrin* case from the

23   Supreme Court, and the very persuasive argument that they

24   list elements as distinct from means, that parallels very

25   much the Fifth Circuit listing of means, I don't think we

1    have much potential for unanimity of theory concerns.

2            And I'm disinclined to do anything but the standard

3    pattern, but I'll hear your arguments, Mr. Norris.

4            **MR. NORRIS**:  Thank you, Your Honor.  Yeah.  We

5    would re-urge the arguments made in our written objections,

6    Your Honor, and urge the Court to follow the *Holley* case.

7            I think we would distinguish -- we recognize the

8    Court gave us this *Sila* case.  Our position is that this is

9    not a bank fraud case.  The Fifth Circuit really has not

10   spoken on a case like Mr. Reagor's in the bank fraud context,

11   so we would urge the unanimity of theory instruction and

12   stand on our objection.

13           **THE COURT**:  Okay.  I'll permit a sur-reply from

14   Ms. Burch explaining why *Holley* doesn't dictate that result

15   here.

16           **MS. BURCH**:  Yes, Your Honor.  My understanding of

17   *Holley* is that in the indictment there were multiple

18   statements charged for each count of the indictment, and so

19   when it went to the jury, they didn't have to agree on which

20   statements were perjurious.

21           That's very different than what we have here where

22   we have two separate counts.  We've charged one thing in

23   Count One.  We've charged something totally different -- I

24   mean, it's the same offense, but it's a different date, it's

25   a different amount of money, it's just separate, we've

1   charged as a separate offense.  We did not take both of those

2   and throw them into one count and say, you guys sort it out.

3   We've given them the opportunity to separately consider each

4   of those events, which is different from *Holley*.

5       **THE COURT**:  And it's thus arguably distinct from

6   the *Richardson* case cited in the Fifth Circuit note where the

7   statute itself created the confusion by allowing series of

8   violations language.

9           Here, because the elements allow for a distinct

10  pairing with the offense date on or about Count One, the

11  offense date on or about Count Two, this is much closer to

12  the *Sila* case even though that *Sila* case is dealing with a

13  different statute.

14          Oh, yay, this Court has stumbled into another case

15  of first impression.  So I'm going to side with the

16  Government on this instruction question.

17          I think the parties have done an exemplary job in

18  briefing the issue and bringing to bear the relevant caselaw.

19  Defendant has received capable and effective representation

20  on this point.  The Government also has discharged its duty

21  to brief the Court.

22          But we have found a bit of a wrinkle.  There just

23  isn't the 1344(2) definitive case from the Fifth Circuit, so

24  we must argue by analogy.  Here, the Court is arguing by --

25  or the Court is persuaded by the Government's argument by

1    analogy to *Loughrin versus United States*, 573 U.S. 351, and

2    then also the *Sila* case from the Fifth Circuit, which deals

3    with some of the dating issues as elements are matched to

4    means underlying the element, and I'm persuaded that we

5    need -- needn't insert the unanimity of theory instruction,

6    but good argument all around.

7          Let me briefly confer with my clerks about what

8    happens next now that we've argued and made that ruling.

9          **(Court/law clerk sotto-voce conference.)**

10         **THE COURT**:  Okay.  So I'm assuming -- I'm assuming

11   at this point, both parties -- where we have 1.27 marked, and

12   this is Page 23 in the proposed jury charge, we would just --

13   given the Court's ruling, just instead insert the pattern on

14   unanimity?  Is that what the Government requests given the

15   ruling?

16         **MS. BURCH**:  No, Your Honor.  The Government doesn't

17   think we need an unanimity instruction at all.

18         **THE COURT**:  Okay.

19         **MS. BURCH**:  It's only those three offenses charged,

20   and there's only one way they've all been alleged to have

21   been committed.

22         **THE COURT**:  Okay.  And from the Defense?

23         **MR. NORRIS**:  Your Honor, of course, we are still

24   standing by our objection requesting, you know, the full 1.27

25   unanimity of theory instruction, but since the Court has

1    ruled against us on that, yes, we would still request, I

2    guess, the pattern instruction.

3          We believe, obviously, that the way this case was

4    charged and the way the evidence came forth at trial, that

5    some instruction of unanimity is still warranted.

6          **THE COURT:**  Okay.  And let me explain, Mr.

7    Norris -- let me better understand the language that was

8    submitted by the Defendant here on unanimity of theory.

9          Is this lifted from a Section 1344(2) case that you

10   were able to find where this was charged, or is this directly

11   from the Fifth Circuit Pattern?  And I can pull that up, if

12   necessary.

13         **MR. NORRIS:**  Your Honor, I believe the language we

14   requested was lifted straight from the Fifth Circuit Pattern.

15         **THE COURT:**  Okay.  Let me double-check that.  It's

16   1.27?

17         **MR. NORRIS:**  Yes, Your Honor.

18         **THE COURT:**  Okay.

19         And, Ms. Burch, refresh my recollection, we've been

20   through a lot these last two days.

21         **MS. BURCH:**  I'm trying to pull it, Your Honor.

22         **THE COURT:**  No.  I have 1.27.  We have already

23   agreed to a separate instruction on multiple counts; is that

24   correct?

25         **MS. BURCH:**  Yes, that's correct, Your Honor.

1          **THE COURT**:  Okay.  Could you -- I believe we've

2     already done that work.

3          **MS. BURCH**:  It's 1.23, Single Defendant - Multiple

4     Counts on Page 15.

5          **THE COURT**:  Okay.  And we've already agreed to

6     that.

7          Okay.  At this point, we're probably going to have

8     to make sausage.  I am concerned because it's a multi-count

9     case where there are multi-elements and different means

10    identified, so if we don't use something like the 1.27

11    unanimity of theory instruction, I think we need something

12    closer maybe to the general pattern.

13         So, Mr. Norris, going back to what you submitted,

14    Paragraph 2, Count -- and I think some of the problem here is

15    for efficiency we've -- or Defense Counsel combined Count One

16    and Two into a single paragraph, but if we work together and

17    maybe break that out.

18         So Counts One and Two of the Indictment accuse the

19    defendant of committing the crime of bank fraud in three

20    different ways, but I think it just repeats itself three

21    times.  The first is that the defendant committed bank fraud

22    by means of false or fraudulent pretenses.  The second is

23    that the defendant committed bank fraud by means of false or

24    fraudulent pretenses -- oh, representations.  Okay.  Sorry, I

25    misread that the first time.

1          **MR. NORRIS:**  Yes, Your Honor.

2          **THE COURT:**  And the third is that the defendant

3    committed bank fraud by means of false or fraudulent

4    promises.

5          Okay.  So those are the three means that are

6    identified by the Fifth Circuit precedent we've been

7    discussing and is also analogous to that Supreme Court case

8    from earlier.

9          If we were -- I'd hate to make it longer, but if we

10   were to create essentially two paragraphs, Count One, then

11   Count Two, and then do that listing, that might cure my

12   confusion.

13         **MS. BURCH:**  Your Honor, I must -- I must be not

14   following the Court because I'm not understanding.  My

15   understanding is that we just established that those three

16   things were means, and because they're means, they don't

17   require unanimity.

18         The other three separate counts are charged as

19   separate counts of the Indictment, and the Court's

20   instruction to that, to -- the instructions require that they

21   be unanimous as to a verdict on all three counts, so I just

22   don't see a place where unanimity of theory even fits into

23   any of those offenses.

24         **THE COURT:**  Okay.  I didn't recall that we had --

25   I've been through several versions of this unanimity fight as

1   a prosecutor.  Did we have the 1.26 instruction, or does it

2   follow such that I can allay any concerns that jurors are

3   getting confused on what they must find.

4          Okay.  So this is it.  It's at Page 28 of the

5   proposed jury charge.

6          **MS. BURCH:**  The 1.26 is the Duty to Deliberate, and

7   it requires the foreperson to write the unanimous answer of

8   the jury in the space.  Is that what you're referring to?

9          **THE COURT:**  Yes.  So I think that's the only other

10  instance where like we're adamant to the jurors, and then we

11  give them a verdict form count by count, of course.

12         I do want some instruction on a unanimous verdict.

13  I know that's distinct from unanimity.  Just because this is

14  a multi-count case.  So we have the instruction on multi-count

15  case.  We have the duty to deliberate instruction.

16         I guess we're just down to this unanimity of

17  theory.  Okay.  I had not been that far forward in the

18  charge.

19         So, Ms. Burch, would it be the Government's

20  argument, based on the finding and the ruling, that 1344(2)

21  by analogy to the Supreme Court's analysis in the *Loughrin*

22  case doesn't require the sort of breaking apart of elements

23  and means underlying that is suggested in that 1.27 unanimity

24  of theory instruction that the Defendant has proposed?

25         **MS. BURCH:**  That's correct, Your Honor.  The

1    elements of the offense are broken apart, and the prior

2    instruction that tells the jury what elements they have to

3    find, and these that they lay out here are means based on

4    those cases that we just discussed.

5        THE COURT:  Okay.  Mr. Norris, one final argument,

6    and then I'm prepared to enter a final ruling, and I do

7    appreciate counsel for being very diligent on pulling all the

8    appropriate case law.

9        MR. NORRIS:  Yes, Your Honor.  Thank you.  We stand

10   by the -- you know, the briefed objections as well as what we

11   previously stated, and we believe -- we still believe that

12   1.27, the pattern Fifth Circuit jury instruction on unanimity

13   of theory should be included.

14       THE COURT:  Okay.  The Court, although there is no

15   current Fifth Circuit case that does this analysis comparing

16   elements and means underlying each element on Section 1344(2)

17   specifically, the Court does continue to agree with the

18   Government by analogy to the *Loughrin* case and the *Sila* case

19   that this is not necessary in this case, and with particular

20   emphasis on the approximate dates and deposit amounts that

21   are referenced in the Indictment.

22       I actually think the unanimity of theory

23   instruction here would create more confusion.  I had to read

24   it three times to identify pretenses, representations, and

25   fraudulent promises, and I've argued unanimity several times

1    in other context.  So I actually think it would further

2    confuse the jury to insert 1.27 in this case, and I do find

3    *Loughrin* and *Sila* persuasive.  The Court will not insert that

4    requested instruction.

5         So that brings us to Page 24.  This should be the

6    straight Fifth Circuit Pattern.  And let me get my notes back

7    together.  2.47 False Statement to a Bank.  And we're on

8    Page 24 of the proposed jury charge.

9         Does the Government have any objection to the

10   language proposed on Page 24 --

11        **MS. BURCH:**  No, Your Honor.

12        **THE COURT:**  -- of that proposal?

13        Okay.  Does the Defendant have any objection to the

14   proposed language on Page 24 regarding False Statement to a

15   Bank?

16        **MR. NORRIS:**  No, Your Honor.

17        **THE COURT:**  Okay.  That will be inserted.

18        Now, Page 25, which refers to aiding and abetting.

19   As it appears in the Indictment, the Government did charge a

20   violation of 18 U.S.C. Section 2.

21        Ms. Burch, I will now allow the Government to argue

22   the necessity of this instruction.

23        **MS. BURCH:**  Yes, Your Honor.  The Government did

24   charge both offenses with the aiding and abetting language.

25   The Defense objected on the basis of unfair surprise.  I

1    don't think that, because it was charged in the Indictment,

2    that it could be an unfair surprise, and there are specific

3    language in there about --

4              THE COURT:  This is the good faith instruction that

5    follows?

6              MS. BURCH:  This is the aiding and abetting

7    instruction, Your Honor, on Page 25 and 26.  We believe that,

8    because we charged aiding and abetting in the Indictment as a

9    theory of conviction, that this lang -- that this instruction

10   should be given.

11             THE COURT:  Okay.  I was jumping ahead a little

12   bit.

13             MS. BURCH:  Sorry.

14             THE COURT:  Yes, I understand.  And I did check the

15   Indictment to make sure it included the magic words "and 2."

16             MS. BURCH:  "And 2."

17             THE COURT:  As it does appear in the charging

18   instrument.  Now I'm referring to Page 27, which is the good

19   faith instruction.

20             MS. BURCH:  Your Honor, my understanding was that

21   the Defense was objecting to the inclusion of Pages 25 and

22   26, so that's why I thought the Court was asking --

23             THE COURT:  No, I'm --

24             MS. BURCH:  -- me about that.

25             THE COURT:  -- asking for your position on Page 27.

1          MS. BURCH:  Okay.  All right.  Yes, Your Honor, for

2     good faith, the Government does not believe that that

3     instruction is warranted.

4          There was no evidence presented here in this

5     courtroom that Mr. Reagor was acting in good faith prior to

6     the disbursement of the loans.  He didn't ask anybody whether

7     he could do it.  He instead sent an e-mail saying to hide it.

8          And all of the evidence that came in about whether

9     working capital is or isn't -- what it is or what it isn't

10    was brought to us by experts hired within the last three

11    weeks, not anything that he actually relied on or believes in

12    terms of when he made the decision to misrepresent to IBC

13    Bank that the loans would be used for working capital.

14          THE COURT:  Okay.  I'll turn now to Mr. Norris.

15    It's my understanding that Defendant objects based on unfair

16    surprise.  How were you unfairly surprised by something that

17    was charged in the Indictment?

18          MR. NORRIS:  Well, Your Honor, I think I'm a little

19    confused again.  Are we on Page 27 and the good faith

20    instruction, because it sounds like that's what Ms. Burch was

21    just arguing?

22          THE COURT:  Well, we're arguing all of them.

23          MR. NORRIS:  Oh, okay.

24          THE COURT:  Page 25, 26, and 27.

25          MR. NORRIS:  Okay.

1          **THE COURT**:  I believe Defendant requested Page 27.

2     Right now, and with fairness, I combined them with my

3     colloquy with Ms. Burch, so this is probably my fault.

4          Let's just focus now on Pages 25 and 26.

5          **MR. NORRIS**:  Okay.

6          **THE COURT**:  The charging instrument does reflect on

7     Page 5 a violation of 18 U.S.C. Sections 1344(2) and 2.  So

8     this is a reference to 18 U.S.C. 2 or Section 2, which is the

9     aiding and abetting statute.

10         It was my understanding that Defendant objects to

11    Pages 25 and 26 on the basis of unfair surprise, and you

12    might imagine the Court needs to hear argument on how

13    Defendant was unfairly surprised by a section that was

14    referenced in the Indictment.

15         **MR. NORRIS**:  Sure, Your Honor.  I'd also like to --

16    because it sounds like Ms. Burch kind of went there on good

17    faith in terms of that wasn't raised within the evidence, I

18    think that would also be our position regarding Pages 25 and

19    26.

20         In Instruction 2.04, I don't see how the aiding and

21    abetting, although it was charged in the Indictment, was

22    raised by any of the evidence.  The only evidence potentially

23    on that was the testimony of Shane Smith, and I don't -- I

24    don't see where that raises any suggestion that Bart Reagor

25    aided and abetted Shane Smith on the IBC loan fraud with

1    which he is charged in this case.

2            **THE COURT**:  Okay.  Ms. Burch, a reply?

3            **MS. BURCH**:  Yes, Your Honor.  The plain language of

4    the proposed instruction says that the guilt of a defendant

5    can be established without proof that the defendant

6    personally did every act constituting the offense alleged.

7            And I believe the evidence was that the defendant

8    sent an e-mail directing Mr. Smith to divert loan proceeds,

9    and also that he -- that anything he does with the direction

10   of another person or acting as his agent or in concert with

11   is part of a joint enterprise.

12           And so I think the evidence does warrant this

13   instruction, and also the -- that the fact that that might be

14   a theory of -- a theory of criminal responsibility in this

15   case has been noticed from the very beginning.

16           **THE COURT**:  Right.  And 18 U.S.C. Section 2 reads

17   as follows, and its header is Principals.  Section (a)

18   Whoever commits an offense against the United States, or

19   aids, abets, counsels, commands, induces or procures its

20   commission, is punishable as a principal; and

21           (b) Whoever willfully causes an act to be done,

22   which if directly performed by him or another would be an

23   offense against the United States, is punishable as a

24   principal.

25           So that statute has been in effect since roughly

1    the 1950's.  It was charged in the Indictment.

2              And am I correct, Ms. Burch, that this is a

3    straight copy of the Fifth Circuit Pattern 2.04 on Aiding and

4    Abetting?

5              **MS. BURCH**:  Yes, Your Honor.

6              **THE COURT**:  Okay.  The Court will insert Pages 25

7    and 26 as that language appears in the proposed jury charge

8    for the reasons stated by the Government, and the Court's

9    separate and independent judgment that evidence and testimony

10   did implicate defendant's role vis-à-vis Shane Smith, and --

11             **MS. BURCH**:  Your Honor, can I make one caveat

12   that you asked me if this is the exact version; it is except

13   that we included the bank fraud language because this offense

14   was the bank fraud, and the mis -- I'm sorry, the --

15             **THE COURT**:  False statement.

16             **MS. BURCH**:  -- false statement to the bank, so with

17   that, I just want -- I don't want to mislead the Court.  That

18   was included, but it's included at the direction of the

19   pattern instruction on Page 26.

20             **THE COURT**:  Thank you.  That was --

21             **MS. BURCH**:  Does that make sense?

22             **THE COURT**:  That was assumed, but --

23             **MS. BURCH**:  Okay.

24             **THE COURT**:  -- yes, it's now been made expressed,

25   so thank you for being so diligent and forthright and candid

1    with the Court.  Yes, that's the Court's understanding that

2    those are appropriate inserts based on Counts One, Two, and

3    Three.

4              So with that, it's a straightforward application of

5    the pattern.  The Court will include Page 25 and 26.  The

6    language appearing at those pages in the proposed jury charge

7    will appear in the final charge.

8              Now, what remains is Page 27, the good faith

9    instruction.  It's my understanding that, here, Defendant has

10   requested Page 27 under *United States versus Harris*, 821 F.3d

11   589, 601.

12             The Court always -- I'm sorry, the Court also notes

13   a reference to *United States versus Beebei*, B-E-E-B-E-I,

14   792 F.2d 1363.

15             Here, the Government responds that this good faith

16   instruction is not necessary in this case because other

17   portions of the jury charge cover the concept.

18             So I'll allow the parties to argue the good faith

19   instruction as it appears on Page 27.  Ms. Burch?

20             **MS. BURCH**:  Yes, Your Honor.  In the cases the

21   Government cited, the Fifth Circuit has held that, because

22   other portions of the pattern jury charge, including the

23   portions of the charge that require intent and other type

24   portions of the charge, substantially cover this, that the

25   good faith element -- I mean, the good faith instruction is

1    just repetitive, and it's unnecessary, and has a tendency to

2    confuse the jury.

3         The jury will already be charged that the defendant

4    must act knowingly to execute his scheme and artifice to

5    defraud.  And the bank fraud statute -- I mean, the bank

6    fraud instruction goes into more detail about that regarding

7    when representations and promises are false or omit material

8    facts.

9         And so the idea that somebody could -- I just think

10   it has the potential to mislead the jury, and the Fifth

11   Circuit cases indicate that other portions of the charge just

12   cover it enough that there's no need to give that

13   instruction.

14        And I also reiterate our information to the Court

15   that there was no evidence presented that Mr. Reagor acted in

16   good faith.  There might have been evidence presented that he

17   didn't know, or he was confused, or, gosh, I didn't know, but

18   there was no evidence that he -- that he actually truly, you

19   know, believed it was all fine.

20        **THE COURT**:  Right.  I understand the nature of that

21   argument.  And I believe you quoted -- I'm sorry, you cited

22   *United States versus Morrow*, 177 F.3d 272, a Fifth Circuit

23   case from 1999, and the *Giraldi* case, G-I-R-A-L-D-I, 86 F.3d

24   1368.  That's a 1996 Fifth Circuit case.

25        Those stand for the general proposition that this

```
 1    separate good faith instruction need not be given because the
 2    concept is adequately covered in the pattern instructions,
 3    and specific here a knowingly requirement.
 4              Are either the Morrow or Giraldi cases a
 5    Section 1344 case or a false statement case?
 6         MS. BURCH:  Your Honor, I'm going to have to look
 7    that up real quick because I just don't remember.
 8         THE COURT:  Okay.  Why don't you do that.  And then
 9    while you're referencing the two cases that you cited, I'll
10    now hear argument from Mr. Norris on the proposed good faith
11    instruction as it appears on Page 27 of the jury charge.
12         MR. NORRIS:  Yes, Your Honor, that proposed
13    instruction I believe we pulled directly from the Fifth
14    Circuit caselaw that was cited.
15              Also, we, obviously, disagree with Ms. Burch's
16    contention that the term "knowingly" also encompasses good
17    faith.  I don't think the cases that she cites are on point
18    from the Fifth Circuit.
19              Also, particularly as it pertains to this case, we
20    clearly raised a good-faith defense that's separate and apart
21    from just saying that, oh, I didn't knowingly do it.  At
22    least half of the defensive case was about how Mr. Reagor
23    relied on the reports of Shane Smith about the nature -- the
24    condition of his company.  He relied on his CFO when he
25    e-mailed the -- the very e-mail that Ms. Burch cites about,
```

1   well, Mr. Reagor just directed Shane Smith to do that.

2          Well, no, he didn't, because, as we saw in that

3   response, which I believe was Government's Exhibit 42, Shane

4   Smith, a CFO, on whom he was relying, said, awesome.  And as

5   the Court, I'm sure, is aware Mr. Cogdell cross-examined Mr.

6   Smith extensively on that.

7          So, yes, I do think good faith was absolutely

8   raised, and not just raised, but it was at least half of our

9   defensive case.  And the mere mention of knowingly and

10  materiality within the bank fraud instruction does not

11  adequately cover the good-faith defense.

12          **THE COURT**:  Okay.  And the two cases that you cite

13  to the Court, I believe it's the *Harris* case and then the

14  *Beebei* case, are those 1344(2) cases?

15          **MR. NORRIS**:  I'm not sure, Your Honor.  We are

16  going to have to Lexis that as well.  I apologize to the

17  Court.

18          **THE COURT**:  Okay.  So --

19          **MS. BURCH**:  Your Honor, *Morrow* is a bank fraud

20  case, but I'm trying to -- it specifically says 1344, but it

21  looks like it might be 1344(1) instead of (2), but, in any

22  event, the discussion regarding good faith, which appears

23  further down here, talks about how the instructions on bank

24  fraud and on knowingly, as well as allowing the Defense to

25  argue good faith, was sufficient to cover that --

```
1              THE COURT:  And to be --

2              MS. BURCH:  -- that theory.

3              THE COURT:  And, to be clear, the spacing of the

4   document might have led to some confusion.  Is Page 27 the

5   pattern for 2.04?  Is it the pattern to include aiding and

6   abetting, followed by the good faith instruction that

7   follows, or is that a separate section that the Defendant has

8   requested?

9              MS. BURCH:  It's a separate section that the

10  Defendant requested.

11             THE COURT:  Okay.  So it is not paired just

12  because --

13             MS. BURCH:  It is not paired --

14             THE COURT:  -- of the way my printout worked.

15             MS. BURCH:  -- with the aiding and abetting

16  pattern.

17             THE COURT:  Okay.  I have not seen it before, but

18  the way this was printed, it appeared that it was a

19  continuation of 2.04, and I could not find that.  So that

20  explains some of the confusion.

21             I will take Page 27 under advisement.

22             Mr. Norris, any additional argument from the

23  Defendant on, you know, your construction of *United States*

24  *versus Harris* and then the *Beebei* case that you've also

25  cited?
```

```
1          MR. NORRIS:  Yes, Your Honor.  Specifically, U.S.

2    v. Harris, that was a wire fraud case under 18 U.S.C. 1343,

3    and I'm just going to -- if I may, I'm going to quote to that

4    opinion from the Fifth Circuit.  I'm sorry, Your Honor

5         (Defense attorneys' sotto-voce conference.)

6          MR. NORRIS:  What is Beebee (phonetic)?

7          MR. PAYNE:  Also a wire fraud.

8          MR. NORRIS:  Okay.

9          THE COURT:  He was a wide receiver for the Buffalo

10   Bills when they lost to the Cowboys in the Super Bowl, Don

11   Beebe.

12         MR. NORRIS:  So I probably --

13         THE COURT:  I don't think -- I don't think that's

14   the defendant in United States versus Beebay (phonetic).

15         MR. NORRIS:  Oh, okay.  Well, is this the Beebei

16   case or no?

17         THE COURT:  Beebei.

18         MR. NORRIS:  Okay.  So I'm quoting from Beebei,

19   Your Honor.  The parties agree that the applicable law in

20   this circuit establishes that an accused is ordinarily

21   entitled to a good-faith defense instruction when intent to

22   defraud is an element of the offense charged, and the defense

23   is fairly raised by the evidence.  And then it cites two

24   other Fifth Circuit caselaw, U.S. v. Goss, U.S. v. Fowler.

25              So I think that, although these were wire fraud
```

1    cases, it does -- it does match up with the fact that a false
2    statement is again charged here.  So really the question just
3    becomes:  Was the good-faith defense raised by the evidence?
4    I think absolutely it was, like I said.  I won't rehash
5    everything I said, but half of our defensive case was
6    basically that he relied on his CFO, which is perfectly
7    reasonable and in good faith.
8            **THE COURT**:  Okay.  And any additional argument
9    on -- there obviously is a potential difference between a
10   good-faith defense and then just various references to other
11   people being responsible and delegation and the rest.
12           Any additional argument from the Defendant on the
13   evidence that reflects the good-faith defense contemplated by
14   this instruction and how the Defendant put that case forward?
15           Obviously, the defendant did not testify in this
16   case.  We didn't hear, you know, the words "good faith," but
17   obviously it can be asserted different ways.
18           So can you point to me your best argument on which
19   evidence reflects the presentation of a good-faith defense.
20           **MR. NORRIS**:  Yes, Your Honor.  I think the
21   cross-examination of Shane Smith.  I think I already kind of
22   mentioned that, but Government's Exhibit 42, Mr. Reagor is
23   not just directing Shane Smith in that e-mail; he's, in
24   effect, saying, here's my plan and offer -- and soliciting
25   advice on what Mr. Smith thought, and apparently what Mr.

1    Smith thought was awesome.

2            Mr. Smith was cross-examined extensively on that.

3    I think similarly -- well, yeah, I think particularly the

4    cross-examination of Mr. Smith, Your Honor, is the evidence

5    that was educed on that.

6            **THE COURT**:  Okay.  And I can -- I can review the

7    LiveNote transcript of that for that evidence.

8            Ms. Burch, one final sur-sur-reply from the

9    Government on this good faith instruction.

10           And I was preliminarily at a loss to match this and

11   pair this with the aiding and abetting section.  I'm glad

12   we've now clarified that this is a separate requested

13   instruction on Page 27.

14           So can you give me your best sur-sur-reply on why

15   Defendant has not elicited enough testimony or presented

16   enough evidence to warrant a separate good faith instruction

17   in a case that does involve intent to defraud.

18           **MS. BURCH**:  Yes, Your Honor.  First, the Court

19   asked me previously about the two cases the Government cited.

20   I responded to you on *Morrow*.

21           I did not respond to you on *Giraldi*, but it is also

22   a bank fraud offense.  And, in that case, the Fifth Circuit

23   found that the instruction was sufficiently covered by other

24   portions of the instruction, such as the good faith

25   instruction was not -- I mean, I guess in this case it was --

1    it just -- it wasn't an abuse of discretion not to give it, I

2    think is the way they termed it, but it wasn't given, and it

3    was okay that it wasn't given.

4             With respect to the evidence, I would point the

5    Court to the fact that, generally when we see good faith, we

6    see somebody that, you know, they asked their lawyer, they

7    tried to make sure that what they did was okay, they took

8    steps to make sure that whatever the alleged conduct was --

9    or tried to make steps, to take steps to make sure that

10   whatever the alleged misconduct was or the alleged crime was

11   was okay.

12            And, here, I think, if the best argument is that

13   Shane Smith said "awesome" after the defendant gave an

14   instruction, we don't get to good faith.  We don't -- we had

15   evidence that the defendant didn't copy any of the lawyers on

16   his team.  He didn't ask any of the people that actually

17   reviewed the documents, other than Shane Smith.  You know, he

18   didn't ask Shane Smith; he directed Shane Smith.

19            And so also, Your Honor, we would suggest that

20   typically we see good faith instructions where the defendant

21   does make some effort to show good faith.  Here, what we have

22   is, oh, well, he -- we can disagree about what the evidence

23   shows, but, in my view, the evidence was, he didn't know he

24   couldn't do it, and now some people have come now and said,

25   yeah, it's okay that you did it anyway, but the evidence

1    was --

2              THE COURT:  Ignorance --

3              MS. BURCH:  -- what the --

4              THE COURT:  -- of the law --

5              MS. BURCH:  -- evidence was, which was --

6              THE COURT:  Right.  I understand --

7              MS. BURCH:  -- hide it.

8              THE COURT:  I understand the nature of your

9    argument.

10             Okay.  You're standing, Mr. Norris, are we now

11   going into sur-sur-sur-reply?

12             MR. NORRIS:  Yes, Your Honor, if I may?

13             THE COURT:  Let's do it.

14             MR. NORRIS:  Thank you, Your Honor.  So I would

15   just add one thing, which is that Government's Exhibit 44,

16   Your Honor, is exactly what Ms. Burch was claiming we were

17   missing here.  Government's Exhibit 44 is an e-mail from

18   Mr. -- and I believe it is in evidence.  It's an e-mail from

19   Mr. Reagor to John Thompson, who was his -- he was mentioned

20   in this case.  He was an independent advisor.

21             It's an e-mail to Shane Smith, his chief financial

22   officer.  It's also an e-mail to Steve Reinhart, who was a

23   Government witness in this case, and he was cross-examined

24   about whether or not he warned the defendant.  Steve

25   Reinhart, although it's unclear whether he acted in a legal

1    capacity, he is a lawyer or was a lawyer at some point.

2           And also on this e-mail is Rachel Reagor, who was

3    mentioned in this case as well, and she certainly is a lawyer

4    and did serve as a lawyer at the Reagor-Dykes Auto Group.

5           In this e-mail, Mr. Reagor says -- first, he starts

6    out about how he appreciates everyone on the deal, but then

7    he says:  I trust all of you to make sure that when we

8    finalize the agreement that we've not created any situations

9    we might regret in the future.

10          Then he continues on.  I think -- I am sending this

11   e-mail to all of you because I think it would be very smart

12   for everyone involved in this transaction and future

13   transactions to use this e-mail group to communicate any

14   concerns or feelings about the agreements that we make going

15   forward.

16          And the rest of the e-mail is a few more paragraphs

17   to similar effect, Your Honor.  And the point being that, if

18   this is in evidence, and then Mr. Reinhart also testified,

19   yeah, I didn't -- I didn't stop the IBC deal, didn't warn

20   him, and, oh, by the way, I took a distribution from the IBC

21   deal, I think good faith, in addition to the Shane Smith,

22   CFO, testimony, I think good faith has been fairly raised.

23          **THE COURT**:  Is everyone in the courtroom familiar

24   with the Whac-A-Mole game?

25          **(Laughter.)**

1          **MS. BURCH**:  Yes, Your Honor.

2          **THE COURT**:  Okay.  It's starting to feel like that

3     with so many attorneys popping up.  Okay.  So we're now into

4     the fifth sur of reply.

5          **MR. HAAG**:  Okay.  Your Honor, that horse is dead

6     and buried, but, if I may, I did notice as I was going

7     through -- if we could go back to Page 8, there is one error

8     in the charge.

9          **THE COURT**:  Okay.  So let's do this on good faith

10    instruction, Page 27.  The Court has your arguments.  This

11    was briefed very well by both sides.

12         I will have my order on the good faith instruction

13    and thus the final charge this evening.

14         **MR. HAAG**:  Yes, Your Honor.

15         **THE COURT**:  And so you will have the benefit of

16    that, and you can modify your closing arguments to prepare.

17    I won't ambush either side with a proposed charge that omits

18    what they think is going to be in the charge.  We will do

19    this tonight.  If necessary, my clerks and I will work late.

20         You will have your ruling.  You'll know if this

21    good faith instruction is included, so that you can modify or

22    prepare closing arguments to match.

23         So the Court is taking under advisement all of the

24    arguments, all of the cases, all of the reasons stated by

25    counsel during this Charge Conference on Page 27, the good

1  faith instruction.

2          But back to Page 8.

3          MR. HAAG:  Yes, Your Honor.  I apologize.  I

4  overlooked this earlier, but the instruction on character

5  evidence was left in, and I think Defense will agree that the

6  character witnesses were Mr. Lowrance and Mr. Landin, who did

7  not testify.

8          THE COURT:  And Defendant, I -- the Court ruled

9  certain documentary evidence inadmissible that was submitted

10  by the Defendant as well.  I can't remember the exact exhibit

11  range.  It's the Government's argument now --

12          MR. HAAG:  Yes, Your Honor, it --

13          THE COURT:  -- that this instruction is not needed?

14          MR. HAAG:  That's correct, Your Honor.  So to admit

15  character evidence under 608(a), it would be the person knows

16  the person's reputation or has an opinion on a character

17  trait at issue, and then the witness would render an opinion

18  on that either, you know, character or characteristic at,

19  issue, or the person's reputation for that characteristic at

20  issue.

21          Here, Landin and Lowrance were the two that were

22  going to testify to that, and they did not testify, and so we

23  can remove, I believe, Section 1.10.

24          THE COURT:  Okay.  And, Mr. Norris, who were the

25  character witnesses in your lineup that testified and offered

1  evidence of general good reputation and truth and veracity,

2  honesty and integrity, et cetera?  This is usually done under

3  the rule identified by Mr. Haag.  I do not recall a witness

4  that was specific to that.

5          MR. NORRIS:  Your Honor, I believe, particularly on

6  the law-abiding citizen portion of the instruction, Chuck

7  Darter testified regarding the accused's practice of -- or

8  character for paying his taxes timely and in full.  Of

9  course, Mr. Darter would be keenly aware of that as he was

10 the defendant's CPA, so he was the defense witness who

11 testified on that piece, Your Honor.

12         THE COURT:  Okay.  And so for purposes of Page 8

13 and 1.10, I should look to Chuck Darter as the relevant

14 witness.

15         MR. HAAG:  Well, Your Honor, we can dispose of that

16 pretty quickly, because it has to be a characteristic related

17 to the offense charged.  This is not a tax fraud case or any

18 sort of tax evasion case or failure to file income taxes.

19         The only reputation characteristics that are at

20 issue here are truth and veracity, honesty and integrity, and

21 a law-abiding citizen.  And, again, the way that you admit

22 that evidence is discuss the witness' familiarity with those

23 traits, how the witness is familiar with those traits, and

24 then the witness renders either an opinion or states the

25 reputation in the community.  That was not done here.

```
1          THE COURT:  The Court sustains the Government's

2     objection to 1.10.  And, with apologies, I did not properly

3     flag this.

4          I have a witness list here.  I do have Mr. Helt and

5     Mr. Landin listed and I believe Mr. Lowrance as well.  They

6     were noticed and listed as potential character witnesses in

7     this case, but they were not called, and this testimony was

8     not elicited.

9          And the Court does find that the Defendant did not

10    designate or offer character evidence, and so the 1.10

11    Character Evidence insertion is now omitted, and the Court

12    will not include that in the final charge.

13         Now, understanding that the Court is taking under

14    advisement the arguments of counsel on Page 27, which relates

15    to the good faith instruction, and you'll have my ruling on

16    that before close of business, let's move to Page 28, 1.26

17    Duty to Deliberate Verdict Form.

18         This is usually where the attorneys begin to exhale

19    because everything should be according to form from this

20    point forward.  This 1.26 Duty to Deliberate section does

21    carry over onto Page 29.

22         Does the Government have any objections to the

23    proposed language appearing on Pages 28 and 29 on the

24    proposed jury charge?

25         MS. BURCH:  No, Your Honor.
```

```
 1          THE COURT:  Does the Defendant have any objections

 2   to the language appearing on Pages 28 and 29 of the proposed

 3   jury charge?

 4          MR. NORRIS:  No, Your Honor.

 5          THE COURT:  Okay.  Those will be included.

 6          We are finally to the last page, Page 30, of the

 7   proposed jury charge.  This is the verdict form.  Only one

 8   copy of this will be made available to the foreperson of the

 9   jury.

10          Does the Government have any objections to the

11   verdict of the jury form reflected on Page 30 of the proposed

12   jury charge?

13          MS. BURCH:  No, Your Honor.

14          THE COURT:  Does the Defendant have any objections

15   to the verdict of the jury form as it appears on Page 30 of

16   the proposed jury charge?

17          MR. NORRIS:  No, Your Honor.

18          THE COURT:  Okay.  I think we're at the end.

19   Counsel are only awaiting instruction on the proposed good

20   faith instruction -- I'm sorry, awaiting this Court's ruling

21   on good faith instruction.

22          All of the other disputed language has now been

23   resolved.

24          As soon as possible, I will issue an order

25   reflecting the Court's ruling on that instruction and then
```

```
1    also attached to that order will be the final jury charge,
2    and you should anticipate that before close of business.
3    I'll just admonish you that my close of business time is a
4    bit later than most, so check your inboxes for that just in
5    case you need to modify closing arguments in any way to
6    reflect what will be charged to the jury.
7              So, with that understanding, is there anything
8    further from the Government?
9              MS. BURCH:  No, Your Honor.
10             THE COURT:  Is there anything further from the
11   Defendant?
12             MR. NORRIS:  No, Your Honor.
13             THE COURT:  You are excused.  You can get to work
14   on closing arguments.
15             We will begin at 8:00, but understanding that there
16   might be some final housekeeping, I'm amenable to doing some
17   work before we call the jury in, but same start time, and I
18   look forward to your closing arguments.
19             If you have any issues with technology, please use
20   some of that early morning time to resolve any issues with
21   the ELMO, the television screen.  Please orient that so that
22   you are well prepared for closing.
23             Anything further, Mr. Haag?
24             MR. HAAG:  No, Your Honor.
25             THE COURT:  Anything further, Mr. Norris?
```

Stacy Mayes Morrison
Official Court Reporter

1          **MR. NORRIS:**  No, Your Honor.

2          **THE COURT:**  Okay.  Court stands in recess for the

3     remainder of the day.

4          **COURT SECURITY OFFICER:**  All rise.

5        **(Proceedings recessed until 8:00 a.m., 10/14/2021.)**

6

7              --------------------------

8

9        **(Further proceedings continued in Trial Volume IV of**

10    **IV.)**

11

12

13

14                    *   *   *   *   *   *

15

16

17

18        I certify that the foregoing is a correct transcript

19    from the record of proceedings in the above-entitled matter.

20    I further certify that the transcript fees format comply with

21    those prescribed by the Court and the Judicial Conference of

22    the United States.

23

24    s/Stacy Mayes Morrison____           11/10/2021_____
      Stacy Mayes Morrison                 Date
25    Official Court Reporter